Filed 12/30/13  P. v. Sanchez CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>MARTIN PULIDO-SANCHEZ,<br><br>Defendant and Appellant. | A136104<br><br><br>(Sonoma County<br>Super. Ct. No. SCR-578248) |

Martin Pulido-Sanchez appeals from a judgment sentencing him to 165 years to life in prison under the "One Strike" law after a jury convicted him of 11 counts of lewd conduct with a child under 14, the victims being his two daughters.  (Pen. Code, §§ 288, subd. (a), 667.61, subds. (b) & former (e)(5) [now (e)(4)].)[1]  He contends: (1) the charges against him should have been dismissed due to preaccusation delay; (2) the charges involving one of his daughters were barred by the statute of limitations; (3) the trial court abused its discretion by imposing consecutive terms; (4) the sentence amounts to cruel and unusual punishment; and (5) trial counsel was ineffective to the extent he failed to preserve any issue for appeal.  We affirm the judgment.

---

**1**    Statutory references are to the Penal Code unless otherwise indicated.  Rule references are to the California Rules of Court.

1

FACTS

H. began dating appellant in 1989. In 1990, appellant, H., and two of H's children, daughter S. and son M., moved into a house on a dairy ranch where appellant worked in the Two Rock area of Sonoma County. S., the younger of the two children, was five years old at the time of the move. After moving to the ranch, appellant and H. had two daughters together: An., who was born in 1990, and Ar., who was born in 1992. Appellant was violent toward H. and M., and H. sometimes left the house to sleep in her car.

Appellant repeatedly molested S., An. and Ar. while they lived at the dairy ranch. In 1999, he fled to Mexico after drugs were discovered at the house and S. reported appellant had raped her once. Appellant returned to the Bay Area and was arrested; and, in 2000, he pled no contest to a single count of forcible lewd conduct with S., a child under 14 years of age. (§ 288, subd. (b)(1).) He was sentenced to prison and sent to a facility in Mississippi to serve his term.

In 2008, while he was still in prison, appellant telephoned Ar. Ar. was very upset by the call, and her therapist contacted the Sonoma County Sheriff's Office to report that Ar. had been molested by her father. Both Ar. and An. were interviewed as part of the resulting investigation.

The Sonoma County District Attorney filed a criminal complaint on March 8, 2010, and an arrest warrant issued. A preliminary hearing took place in March 2011, and an amended information was thereafter filed charging appellant with 11 counts of lewd conduct with a child under 14 under section 288, subd. (a), with five counts naming Ar. as a victim and six counts naming An. as a victim. The pleading included a "multiple victim" allegation as to each count under the One Strike law (§ 667.61, subd. (b) & former subds. (c)(7) & (e)(5) [now (c)(8) & (e)(4)]; see Stats. 1993-1994, 1st Ex. Sess., ch. 14, § 1, p. 8570; Stats. 1997, ch. 817, § 6, p. 5575; Stats. 1998, ch. 936, §§ 9, 40, eff.

2

Sept. 28, 1998, pp. 6874, 6923.)[2] As to three of the Ar. counts and all of the An. counts, it was alleged appellant had committed acts of substantial sexual conduct under section 1203.066, subdivision (a)(8). Two counts alleging continuous sexual abuse under section 288.5, subdivision (a) were dismissed before trial.

Appellant filed a motion to dismiss the charges based on preaccusation delay in filing the complaint, which was denied by the trial court. The case proceeded to trial before a jury.

S. testified appellant had molested her repeatedly from the time she was about four years old, at least once a week for about 10 years.[3] The acts included touching her vagina with his hands and penis, kissing, and intercourse. The property at Two Rock was like a "really old ghost town," with barns, sheds, houses, and a chicken coop near the house where the family lived. Appellant would abuse S. in the barn and in his bedroom, and occasionally in their living room when H. was not home. S. confided in her best friend about the abuse, but did not tell anyone else because appellant had threatened to hurt her mother and had told S. he would keep abusing her regardless. When she decided to come forward and report one act of rape, she was 13 years old. She did not disclose the many other acts of abuse, because she thought it would be difficult to talk about so many incidents. The parties stipulated appellant had been convicted of a single count of forcible lewd conduct against S. on October 2, 2000.

An. testified appellant began sexually molesting her when she was four or five years old, and continued to do so about once a week until he left the house in 1999. The acts included intercourse, digital penetration and oral sex, and were committed in the living room of the house, her parents' bedroom, the bedroom she shared with her sisters, the chicken shed near the house, a barn near their house and another barn on the dairy

---

**2** Unless otherwise noted, we refer to the version of the One Strike law (and other sentencing statutes) that were in effect at the time appellant committed the offenses.

**3** S.'s testimony of uncharged acts was offered to show a common plan, opportunity and motive under Evidence Code section 1101, subdivision (b) and propensity to commit acts of child molestation under Evidence Code section 1108.

3

ranch. Appellant often abused Ar. at the same time as An., or had one of them act as a lookout while he molested the other. An. once saw appellant grab S. and orally copulate her while S. screamed. An. did not did not disclose the abuse because she loved her father very much and considered the acts their secret.

Ar. described a similar pattern. She testified she was abused by her father in the chicken coop in 1997, when she was about five years old. She recalled a day in which he touched her vagina over her clothing while he was driving her home from school, as well as an incident in the barn where he laid her on the hay and put his penis in her vagina. He would also put his penis in her vagina on other occasions in the barn, the chicken coop and in her parents' bedroom. He once had her stand naked in front of the mirror in his bedroom and look at herself; other times he would put her in bed with him and make her touch his penis with her hand under the covers. She considered the abuse to be "like daddy's secret" and did not report it because he was her father and she trusted him. She did not really understand what was going on at the time, and was also afraid because appellant had mood swings. Sometimes he behaved like a normal father "[a]nd then sometimes he was . . . like[] a really terrifying monster that you didn't want to hurt anybody by saying anything."

Appellant took the stand and denied he had ever touched S., An. or Ar. inappropriately, describing Ar. and An. as his "princess[es]." He worked many hours during the day and the girls were not allowed to accompany him to the barn. He argued frequently with H., who would accuse him of things, and he had hit H. in his daughters' presence. Appellant believed he had a good relationship with S. in general, but he struck her and grabbed her hair when she was 12 years old because she became "jumpy" after he confronted her about speaking to a boy on the telephone. S. was very angry at him after that incident.

Asked about his departure from the house in 1999, appellant explained he "got into a little trouble with the law." He returned to the Bay Area to reunite with his family and was arrested on charges that included the rape of S. He pled no contest to that count, though he did not understand what he was pleading to, because his attorney told him the

4

judge in his case would be very lenient. He acknowledged telling a police officer his penis had touched S.'s leg, but claimed that many things he said during the interview were "lies." Appellant had used methamphetamine, alcohol and marijuana in the 1990's, so much so that he sometimes suffered from memory loss. Though he had considered the possibility he committed sexual assaults against his children while in a blackout stage, he did not believe he did so.

When appellant was interviewed by detectives about the allegations by An. and Ar., appellant told them "Whatever my daughter would say, I would say yes." He acknowledged during the interview he might have molested An. once or twice.

The jury convicted appellant of all charges and found the special allegations to be true. The court imposed a prison sentence of 165 years to life, consisting of 15 years to life on each of the 11 counts under the One Strike law, the sentences to be served consecutively.

## DISCUSSION

### I. *Motion to Dismiss Based on Delay in Prosecution*

Appellant argues the trial court should have granted his pretrial motion to dismiss the charges based on preaccusation delay. He contends he was prejudiced by the delay between the time Ar.'s therapist reported the crimes to law enforcement in May 2008, and the time of Ar.'s first interview by law enforcement in December 2008. Appellant also asserts he was prejudiced because the criminal complaint was not filed until March 2010, 11 months after the case was submitted to the district attorney. We disagree.

a. Hearing and Trial Court's Ruling

In the hearing on the motion to dismiss, the following timeline was established: Ar. told her therapist about the molestations on April 30, 2008, who in turn notified the Sonoma County Sheriff's Office on May 5. Detective Lomanto was advised of the report on May 8, and contacted the therapist within a few days of receiving that information. On May 27, Lomanto spoke to Ar.'s foster mother, Cynthia M., who told him Ar. had been extremely traumatized by the events and was not yet able to speak to him. Cynthia told Lomanto they would contact him when Ar. was ready. Lomanto checked back with

5

the family when he did not hear from them, and in August or September, he was told Ar. was ready to be interviewed. An interview scheduled in September or October had to be cancelled.

Lomanto interviewed Ar. at the Redwood Children's Center on December 8, 2008, accompanied by an interview specialist and deputy district attorney. This was the first time the district attorney's office was notified of the allegations. That same day, Ar.'s foster family told Lomanto that Ar.'s sister An. had been molested as well. Lomanto contacted An., who was then living in New York, and she flew to California for an interview on January 15, 2009. In Lomanto's view, he did not have enough information to follow through with his investigation until he had spoken to both Ar. and An. Lomanto submitted the case to the district attorney's office on April 30, 2009, and the criminal complaint and arrest warrant issued on March 8, 2010.

During his investigation, Lomanto learned appellant was incarcerated in a facility in Mississippi on his California prison sentence. Lomanto interviewed him in California on July 26, 2010, the day of his release. Lomanto had requested permission to travel to Mississippi to interview appellant at an earlier date, but was told by his supervisors they did not have the funds necessary for him to do so. Lomanto did not seek to have appellant transferred back to California before the expiration of his prison term.

Appellant's defense investigator, James Baker, was also called as a witness at the hearing on the motion to dismiss. Baker was appointed to the case on June 9, 2011. He testified he had trouble locating witnesses, because "the information that we had on witnesses that were stated to me by the defendant were not listed in the original police reports. And then the defendant was only able to recall the first name of witnesses that he believed needed to be interviewed." Baker later explained he had expected the police reports to contain the names of witnesses who worked at the dairy ranch at the time of the alleged molestations.

Baker visited a total of seven ranch and dairy properties, including the ranch at Two Rock, and made contact with people at two of the properties. He spoke to Maria Alonzo, who lived with her family in the house where appellant and his family had lived,

6

and whose husband David had worked with appellant between 1995 and 1999. Baker also spoke to Dennis Hansen, the manager of the dairy and the nephew of its owner, but Hansen was reluctant to provide information and did not appear to remember some facts. Hansen would not or could not provide Baker with employment records for the dairy, and he did not want Baker to speak with dairy employees. A person named Lorenzo was identified as a potential witness, but Baker could not find him and believed he did not want to speak to him. David Alonzo did not make himself available for an interview.

Defense counsel stipulated the delay between the commission of the offenses and the therapist's report to law enforcement in May 2008 was not caused by the prosecution. Counsel argued appellant had been prejudiced by the district attorney's delay in filing the charges after the molestations were reported, due to the victims' inability to recall specific dates and the defense investigator's difficulty in locating witnesses.

The court denied the motion to dismiss, stating: "[Appellant] has made a due process claim under the state and [the] federal Constitutions based on preaccusation delay. Under the California Constitution the test is to balance actual prejudice against justification for the delay. . . . [¶] Under the federal standard, in addition to showing actual prejudice, [appellant] must also show that the delay was undertaken to gain a tactical advantage over [him]. . . . [¶] In the present case there are two separate periods of delay. First, there is the delay between the date the offenses occurred and the date the offenses were first reported to law enforcement. Then there's a second delay between the time the offenses were reported and the date charges were filed. [¶] As for the first delay, the court finds that the delay is justified based on the fact that law enforcement had no knowledge of any of the victims' accusations until 2008; therefore, any prejudice arising out of that delay would be outweighed by the justification for the delay. [¶] As for the second period of delay, [appellant] has failed to demonstrate any actual prejudice arising out of that specific period of delay. There's been no evidence presented that any physical evidence went missing during that period, that any witness became unavailable during that period, or that any witnesses' memory faded during that period. Since no prejudice has been shown during that period of delay the court will not—the court need not make

7

any findings . . . whether that period of delay was justified or unjustified. [¶] Additionally, to the extent [appellant] is claiming a federal due process violation, [he] also fails to demonstrate the delay was undertaken to gain a tactical advantage over [him]."

B. <u>Legal Principles</u>

Preaccusation or investigative delay does not implicate a defendant's speedy trial rights under the federal and the state Constitutions (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15, cl. 1), but may raise a due process issue when the delay is both unjustified and prejudicial. (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250 (*Nelson*).) "[T]he right of due process protects a criminal defendant's interest in fair adjudication by preventing unjustified delays that weaken the defense through the dimming of memories, the death or disappearance of witnesses, and the loss or destruction of material physical evidence." (*People v. Martinez* (2000) 22 Cal.4th 750, 767.) "A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay. The prosecution may offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay." (*People v. Catlin* (2001) 26 Cal.4th 81, 107.)

Though a claim based on the federal Constitution requires a showing the delay was undertaken to gain a tactical advantage over the defendant (*Nelson*, *supra*, 43 Cal.4th at p. 1251), "under California law, negligent, as well as purposeful, delay in bringing charges may, when accompanied by a showing of prejudice, violate due process" (*id*., at p. 1255). Because the protection afforded under the California Constitution is "at least as favorable for [appellant] in this regard as the law under the United States Constitution," we apply California law to appellant's claim. (*Id*. at p. 1251.)

We review the trial court's ruling on a motion to dismiss based on preaccusation delay for abuse of discretion, deferring to any underlying factual findings made by the court so long as they are supported by substantial evidence. (*People v. Cowan* (2010) 50 Cal.4th 401, 431.) Whether a delay was prejudicial to the defendant is a question of fact. (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 911-912.) Prejudice may not be

presumed.  (*People v. Abel* (2012) 53 Cal.4th 891, 908-909; *Nelson*, *supra*, 43 Cal.4th at p. 1250.)

C.  <u>Analysis</u>

Appellant divides the preaccusation delay in this case into two blocks of time—the seven-month period between the therapist's report of the crimes against Ar. to law enforcement in May 2008 and Lomanto's initial interview of her in December 2008, and the 11-month period between Lomanto's submission of the case to the district attorney in April 2009 and the filing of the criminal complaint in April 2010.  Because the trial court's ruling was based on the lack of prejudice rather than the reasonableness of the delay, we view the claim as one involving a single block of time from May 2008 until March 2010.

Substantial evidence supports the trial court's conclusion appellant was not prejudiced by the delay.  Though it is undoubtedly true that memories faded and witnesses became unavailable during the years between the commission of the crimes and the trial on the charges, the defense did not establish any particular evidence was lost between May 2008 and March 2010, the period at issue.  Baker's testimony supported an inference the potential witnesses he spoke to were either reluctant to talk or had difficulty remembering certain facts, but appellant did not establish those witnesses would have been more cooperative or helpful if the trial had gone forward in May 2008, when the accusations were first reported to law enforcement.  The prosecution of child molestation charges based on generic testimony, i.e., testimony about conduct occurring over several years when the facts of one offense are indistinguishable from those of other offenses, does not itself deprive a defendant of due process.  (*People v. Jones* (1990) 51 Cal.3d 294, 318; *Brown v. Superior Court* (2010) 187 Cal.App.4th 1511, 1527.)

Appellant argues he was entitled to dismissal under *People v. Cave* (1978) 81 Cal.App.3d 957, because the authorities were required to notify him of the pending charges once the complaint was filed.  We are not persuaded.  The court in *Cave* considered a prisoner's statutory right to be brought to trial on new charges within 90 days of demanding a trial under section 1381.  (*Cave*, at p. 964.)  It concluded that

9

because the authorities had not notified the defendant in that case of the new charges against him, he was excused from the statutory requirement of filing a demand for a trial, and his speedy trial claim involved the same basic test as when no specific statute is involved; i.e., the court must weigh the prejudicial effect of the delay against the justification for the delay. (*Ibid*.) The record in this case does not reveal when appellant first learned of the charges against him, and no postaccusation speedy trial claim has been raised under section 1381. In any event, *Cave* requires a showing of prejudice and prejudice has not been demonstrated.

Appellant claims he was "ambushed" by the detectives who interviewed him upon his return to California after he finished serving his prison sentence in Mississippi. But no evidence was presented to show he was surprised by the interview or the charges against him, and he did not seek to suppress his statements as involuntary. And, even if we assume appellant was notified of the charges for the first time during the interview, he has failed to establish any connection between the preaccusation delay of which he now complains and his statements during the interview.

Accordingly, the trial court did not abuse its discretion when it concluded prejudice had not been established. It was unnecessary for the court to consider the reasons for the delay and did not err in failing to do so. (See *In re Johns* (1981) 119 Cal.App.3d 577, 581 [when considering delay in filing petition to extend commitment under § 1026.5, lack of prejudice made it unnecessary to consider reasons for delay].)

## II. *Statute of Limitations*

Appellant contends his conviction of the six counts naming An. as a victim were barred by the relevant statutes of limitation and must be reversed, also necessitating reversal of the multiple victim findings under the One Strike law. Although appellant did not raise the issue in the trial court, we consider it on the merits under *People v. Williams* (1999) 21 Cal.4th 335, 338, and conclude the counts were timely brought.

The An. counts (counts 8-13) were alleged to have been committed between June 6, 1995 and December 1, 1999. The prosecution was commenced on March 8, 2010, when the criminal complaint was filed and an arrest warrant issued. (§ 804, subd. (d);

*People v. Smith* (2002) 98 Cal.App.4th 1182, 1186 (*Smith*).)  The district attorney proceeded on the theory the action was timely under section 801.1, subdivision (a), which currently provides, "Notwithstanding any other limitation of time described in this chapter, prosecution for a felony offense described in Section . . . 288 . . . that is alleged to have been committed when the victim was under the age of 18 years, may be commenced any time prior to the victim's 28th's birthday."  Allegations to this effect were included in the amended information and jury instructions and found true as part of the verdict on each count.

 Although appellant did not raise a statute of limitations challenge in the trial court, he now contends the counts involving An. were time-barred because section 801.1, subdivision (a) did not become effective until January 1, 2006, and the previous limitations period had already expired by then.  (See *Stogner v. California* (2003) 539 U.S. 607, 617-621 [ex post facto clause prohibits resurrecting time-barred prosecution, distinguishing cases in which limitations period is extended before the prior period expired]; *People v. Simmons* (2012) 210 Cal.App.4th 778, 787 (*Simmons*), citing § 803.6, subd. (b) [declaring existing law that change in statute of limitations applies if prosecution was not time-barred on the effective date of the change].)  The People respond that appellant was charged and convicted under the One Strike law, which subjects him to a life sentence and to prosecution without regard to a limitations period under section 799, which provides, "Prosecution for an offense punishable by death or by imprisonment in the state prison for life or for life without the possibility of parole . . . may be commenced at any time."

 Notwithstanding the theory on which the district attorney proceeded in the trial court, we agree with the People that section 799 applies.  (See *People v. Martinson* (1986) 188 Cal.App.3d 894, 899-900, fn. 6 [judgment affirmed when suit was timely under different statute of limitations than applied by the trial court].)  In *People v. Perez* (2010) 182 Cal.App.4th 231, 239-240 (*Perez*), the court interpreted section 799 to extend to a defendant who, like appellant, was charged with and convicted of section 288, subdivision (a) violations with true findings under the multiple victim provision of the

11

One Strike law. Such a defendant, the court reasoned, has committed a felony "punishable by . . . imprisonment in the state prison for life" within the meaning of section 799. "Section 667.61 is an alternative penalty scheme that, when charged, defines the length of imprisonment for the substantive offense of violating section 288[]. Thus, the unlimited timeframe for prosecution set out in section 799 for an offense 'punishable by death or by imprisonment in the state prison for life . . .' applies, given that [the] defendant was found guilty of violating section 288[] *and* 'in the present case or cases' (§ 667.61, subd. (e)(5)) was found guilty of another such violation involving another victim (*ibid*.), and therefore was subject to the life-term sentencing provision contained in section 667.61, subdivision (b)." (*Perez*, at pp. 239-240.)

The court in *Perez* distinguished *People v. Turner* (2005) 134 Cal.App.4th 1591 (*Turner*), which concluded section 799 does not govern when a defendant receives a life sentence as a consequence of having qualifying prior convictions under the "Three Strikes" law (§ 1170.12). *Turner* explained a Three Strikes law sentence, "is not a punishment specified by statute for an 'offense,' i.e., the current act for which the defendant is to be prosecuted." (*Id*. at p. 1597.) Rather, "[i]t is an alternative sentence for those who commit a current felony offense, *and* who are recidivist offenders" and "is imposed upon conviction of 'a felony' without regard to the seriousness of the current felony offense, if the defendant has two or more 'serious' or violent felony convictions." (*Ibid*.)

Because the result in *Turner* was predicated on the distinction between recidivist allegations and conduct constituting the current offense, we agree with *Perez* it is not controlling. As explained in *Perez*, the holding in *Turner* was based in part on the " '. . . primary recommendation of the Law Revision Commission that the length of a "limitations statute should generally be based on the seriousness of the crime." [Citation.] The use of seriousness of the crime as the primary factor in determining the length of the applicable statute of limitations was designed to strike the right balance between the societal interest in pursuing and punishing those who commit serious crimes, and the importance of barring stale claims. [Citation.] It also served the procedural need

12

to "provid[e] predictability" and promote "uniformity of treatment for perpetrators and victims of all serious crimes." ' ([*Turner*, *supra*, 134 Cal.App.4th] at p. 1594.) Defendant's crimes were serious enough to earn him a life sentence; therefore they were serious enough to warrant prosecution at any time during his natural life." (*Perez*, *supra*, 182 Cal.App.4th at pp. 241-242.)

The People alternatively claim the convictions on the An. counts may be upheld because the evidence showed appellant committed many more lewd acts against An. than were charged, and at least six of them were committed within the limitations period of section 801.1, subdivision (a). It appears the People are correct on this point as well.

On the dates appellant was alleged to have committed his offenses against An., the statute of limitations for a violation of section 288, subdivision (a) was six years. (Former § 800; Stats. 1984, ch. 1270, § 2, p. 4335.) A section 288, subdivision (a) violation committed on June 6, 1995, the earliest date in the range alleged in the amended information for the An. counts, would have been time-barred as of June 6, 2001 had the six-year limitations period remained intact. However, on January 1, 2001, before the expiration of the six-year period, the Legislature enacted former section 803, subdivision (h)(1) and extended the limitations period for felonies requiring sex offender registration (including § 288, subd. (a) violations) to 10 years. (Stats. 2000, ch. 235, § 1, p. 2338; *Simmons*, *supra*, 210 Cal.App.4th at p. 788; see § 801.1, subd. (b) [continuing 10-year limitations period].)

Under this 10-year limitations period, any section 288, subdivision (a) violation committed on or after January 1, 1996, was not time-barred on January 1, 2006, when section 801.1, subdivision (a) went into effect and extended the limitations period until the victim's 28th birthday—a provision that would render the prosecution in this case timely because An. has not yet turned 28. (Stats. 2005, ch. 479, § 2, p. 3790; see Stats. 2007, ch. 579, §§ 40, 53, eff. Oct. 13, 2007, pp. 4845, 4853.) Thus, the prosecution of each section 288 violation against An. would be untimely if committed between June 6, 1995 (the earliest date alleged in the information) and December 31, 1995, but timely if committed between January 1, 1996 and December 31, 1999 (the latest date alleged in the

13

amended information).  Appellant agrees December 31, 1995 is the date that demarcates timely and untimely charges.

Although the earliest date in a range of dates controls when a statute of limitations challenge is based on the pleading itself (*People v. Angel* (1999) 70 Cal.App.4th 1141, 1145-1147 (*Angel*); *Gasaway v. Superior Court* (1977) 70 Cal.App.3d 545, 551), the proper question on review of a criminal conviction after a trial is "whether the record demonstrates that the crime charged actually fell within the applicable statute of limitations." (*Smith*, *supra*, 98 Cal.App.4th at p. 1193; accord, *People v. Ortega* (2013) 218 Cal.App.4th 1418, 1433 (*Ortega*).)  In this case, each count did.

An. testified appellant molested her about once a week from 1995 until 1999, at locations that included the chicken shed, the barn near the family home, the dairy barn, her parents' bedroom and the bedroom she shared with her sisters.  Her timeline as to some of these acts was vague, but she specifically described acts of intercourse and digital penetration in the chicken shed in 1995, 1996, 1997, 1998, and 1999.  An. also testified the molestations occurred most frequently in her parents' bedroom, where she saw appellant molest Ar. as well.  The crimes against Ar. did not begin until 1997, a period appellant concedes was within the statute of limitations.

The evidence presented the jury with an all-or-nothing choice—that appellant had committed lewd acts against An. on a weekly basis from 1995 until 1999, or that he did not molest her at all.  In convicting appellant of the charged offenses, the jury necessarily accepted An.'s version of events over appellant's.  Given An.'s testimony about weekly molestations in the chicken shed in 1996, 1997, 1998 and 1999, and frequent molestations in her parents' bedroom, with her sister's presence dating these acts as occurring in 1997 or later, at least six violations of section 288 were committed after December 31, 1995.  The prosecution was timely.  (*Ortega*, *supra*, 218 Cal.App.4th at p. 1431 [when range of dates alleged, some within and some outside statute of limitations, victim's testimony about weekly molestations sufficient to show defendant committed at least six acts within limitations period]; *Smith*, *supra*, 98 Cal.App.4th at pp. 1188-1190 [evidence showed the defendant had committed at least one other violation of section 288

14

or 288.5 within the six-year limitation period where victim testified to hundreds of acts, a multitude of which occurred within the necessary range]; contra, *Angel*, *supra*, 70 Cal.App.4th 1146-1147 [section 288 convictions reversed where range of dates alleged and victim's testimony did not support a finding that any act occurred within limitations period].)

### III. *Section 1203.066 as "Element" of One Strike Law Allegations*

Appellant argues the trial court should not have sentenced him under the One Strike law because the prosecution failed to plead and prove he was ineligible for probation under the version of the statute that applies to his offenses. We disagree.

When appellant committed the crimes in this case, the One Strike law provisions of former section 667.61 applied to defendants convicted of specified sexual offenses, including, "(c)(7) A violation of subdivision (a) of Section 288, *unless the defendant qualifies for probation under subdivision (c) of Section 1203.066*." (Former § 667.61, subd. (c), italics added; Stats. 1993-1994, 1st. Ex.Sess., ch. 14, § 1, p. 8570; Stats. 1997, ch. 817, § 6, p. 5575; Stats. 1998, ch. 936, §§ 9, 40, eff. Sept. 28, 1998, pp. 6874, 6923.) Former section 667.61, subdivision (c)(7) created the only exception to the mandatory prison terms under the One Strike law, allowing probation to be granted to a resident child molester convicted of violating section 288, subdivision (a) if he met the requirements of section 1203.066, former subdivision (c).[4] (*People v. Wutzke* (2002) 28 Cal.4th 923, 932 (*Wutzke*); *People v. Mancebo* (2002) 27 Cal.4th 735, 741, fn. 3; *People v. Woodward* (2011) 196 Cal.App.4th 1143, 1150 (*Woodward*).) At the times relevant here, section 1203.066, former subdivision (c) allowed probation to be granted to a defendant convicted of violating section 288, subdivision (a) when the defendant was "the victim's 'relative' or 'member of the victim's household,' " if other conditions

---

[4] In 2006, section 667.61 was amended to list lewd conduct under section 288, subdivision (a) as a qualifying One Strike law conviction, without any allowance for probation eligibility under section 1203.066. (Former § 667.61, subd. (c)(8); Stats. 2006, ch. 337, §§ 33, 62, eff. Sept. 20, 2006, pp. 2639, 2668.)

concerning treatment and the safety and best interests of the victim were met. (*People v. Hammer* (2003) 30 Cal.4th 756, 765-766.)[5]

In *Woodward*, *supra*, 196 Cal.App.4th 1143, the court rejected the argument now raised by appellant, concluding probation ineligibility under section 1203.066 need not be pleaded and proved as part of a One Strike law allegation. The court reasoned that while a fact used to *increase* a defendant's sentence must be pleaded and proved, the prosecution need not allege the absence of factors that might otherwise *decrease* the sentence, such as those allowing for the possibility of probation. (*Woodward*, at pp. 1151-1152.) "Rather than being a burden on the prosecution to disprove, any eligibility for probation must be shown *by the defendant*. '[A] defendant has the burden to present evidence showing he is entitled to consideration for probation under subdivision (c) of section 1203.066.' [Citation.]" (*Id*. at p. 1152.) We agree with the court in *Woodward* that appellant's hypothetical probation eligibility under section 1203.066 was a

---

5    Section 1203.066, former subdivision (c), which was in effect until December 31, 2005, provided that a defendant convicted of violating section 288, subdivision (a) could be granted probation, notwithstanding a finding of substantial sexual conduct under section 1203.066, subdivision (a)(8), "when the court makes all of the following findings:

"(1) The defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household.

"(2) A grant of probation to the defendant is in the best interests of the child.

"(3) Rehabilitation of the defendant is feasible, the defendant is amenable to undergoing treatment, and the defendant is placed in a recognized treatment program designed to deal with child molestation immediately after the grant of probation or the suspension of execution or imposition of sentence.

"(4) The defendant is removed from the household of the victim until the court determines that the best interests of the victim would be served by returning the defendant to the household of the victim.

"(5) There is no threat of physical harm to the child victim if probation is granted. . . ." (Stats. 1993-1994, 1st Ex. Sess., ch. 60, §§ 3.5, eff. Nov. 30, 1994, pp. 8806; Stats. 1995, ch. 935, § 4, p. 8570; Stats. 1997, ch. 817, § 13, p. 5584.)

Similar provisions are contained in the current version of section 1203.066, subdivision (d), though the statute now absolutely bars probation when, as here, the crimes involve substantial sexual conduct.

16

sentencing matter on which he bore the burden of producing evidence, not a circumstance whose absence had to be proved beyond a reasonable doubt as an element of the One Strike law allegation.

Even if we were to agree that probation ineligibility must be pled and proved as an element of a One Strike law allegation, appellant would not be entitled to relief. A court has no legal authority to grant probation to a defendant who, like appellant, is presumed ineligible due to a finding of substantial sexual conduct under section 1203.066, subdivision (a)(8), when the molestation victim is no longer a child at the time of sentencing. (*People v. Wills* (2008) 160 Cal.App.4th 728, 740.) Because An. and Ar. had indisputably reached the age of majority before the date appellant was sentenced, appellant was categorically ineligible for probation and any error in failing to allege probation ineligibility was harmless. "No outcome more favorable to [appellant] would have resulted from any change in the pleading requirements." (*Woodward*, *supra*, 196 Cal.App.4th at p. 1153, citing *People v. Watson* (1956) 47 Cal.2d 818, 834-836.)

IV. *Imposition of Consecutive Sentences*

Appellant argues the trial court abused its discretion when it imposed consecutive sentences for each count, for a total of 165 year to life. We disagree.

As the trial court recognized, it had the discretion to run the life sentences under the One Strike law concurrently or consecutively. (*People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1261-1263 [court has discretion to impose concurrent or consecutive sentences for section 288, subd. (a) violations under One Strike law].) The court opted for consecutive sentences, noting the following reasons: (1) the crimes were separated in time and place (rule 4.425(a)(3)); (2) the victims were particularly vulnerable (rule 4.421(a)(3)); (3) the circumstances of the crimes indicate planning (rule 4.421(a)(8)); and (4) appellant took advantage of a position of trust (rule 4.421(a)(11)).

Appellant disputes the factors cited by the court, claiming his crimes were committed due to "unknowable psychological factors"; that they only happened opportunistically, when he could take advantage of his wife's absence; that "[a]ny young victim of sexual molestation is 'particularly vulnerable' "; and that while he took

17

advantage of a position of trust, the Legislature has in other contexts viewed the parental relationship as a "*mitigating*" factor in child sex abuse cases, by allowing probation where it otherwise would be prohibited. It is difficult to discern how any of these points would support a claim that consecutive sentences were unwarranted. Appellant repeatedly victimized his two very young daughters over a number of years, failing to suppress his "unknowable psychological influences," which strongly suggests his actions were planned. It may be that all victims of section 288, subdivision (a) violations are vulnerable, but these girls were particularly so, due to their very young age and relative geographic isolation on the ranch. (*People v. Garcia* (1985) 166 Cal.App.3d 1056, 1069-1070 [factors making minor under 14 particularly vulnerable include "extreme youth within the given age range"].) Appellant's parental relationship with his victims was in no way mitigating given the tremendous breach of trust his acts involved.

The trial court relied on appropriate aggravating factors supported by the evidence, and it did not abuse its discretion when it decided that cumulatively, they warranted the imposition of consecutive terms. (See *People v. Valdez* (2011) 193 Cal.App.4th 1515, 1524 [court properly imposed consecutive terms under One Strike law based on victims' extreme youth, defendant's position of trust as a caretaker, and defendant's use of threats and intimidation].) "[P]ersons convicted of sex crimes against multiple victims . . . 'are among the most dangerous' from a legislative standpoint." (*Wutzke*, *supra*, 28 Cal.4th at p. 930-931, citing *People v. DeSimone* (1998) 62 Cal.App.4th 693, 698.) This is not the rare case in which the trial court's discretionary decision was irrational or arbitrary or fell outside the bounds of reason. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978 [" 'burden is on the party attacking the sentence to show . . . [it] was irrational or arbitrary' "]; *People v. Williams* (1998) 17 Cal.4th 148, 162 [appellate court reviewing sentencing decision must determine "whether the ruling in question 'falls outside the bounds of reason' "].) That other courts might have imposed lesser sentences under the One Strike law (e.g., *DeSimone*, at p. 696 [court imposed term of 40 years to life in case involving 22 counts of lewd conduct with daughter and one count of forcible sex against wife]) does not mean the trial court in this case abused its discretion.

18

V. *Cruel and Unusual Punishment*

Appellant argues his sentence of 165 years to life amounted to cruel and unusual punishment under the federal and the state Constitutions. (U.S. Const., 8th Amend.; Cal. Const., art. I, § 17.) We disagree, recognizing that the sentence imposed is longer than appellant's probable life span.

A punishment violates the Eighth Amendment of the United States Constitution if it is "grossly disproportionate to the severity of the crime." (*Ewing v. California* (2003) 538 U.S. 11, 21.) Successful proportionality challenges are " 'exceedingly rare.' " (*Ibid*.) A punishment may amount to cruel or unusual punishment under article I, section 17 of the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.) We analyze three criteria to make this determination: the nature of the offense and the offender, and the degree of danger both pose to society; a comparison of the sentence with those for more serious offenses under California law; and a comparison of the sentence with those in other states for the same offense. (*Id*. at pp. 425-427.)

In cases not involving a defendant who was a juvenile at the time of the offense, a prison sentence of life without the possibility of parole (or its functional equivalent) may be imposed in an appropriate case without offending the either the state or the federal constitution. (*Harmelin v. Michigan* (1991) 501 U.S. 957 [sentence of life without parole for possession of 672 grams of cocaine not cruel and unusual]; *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1376, 1383 [Three Strikes law sentence of 115 years plus 444 years to life for multiple felony counts with firearm and great bodily injury allegations not cruel or unusual]; cf. *Graham v. Florida* (2010) 560 U.S. 48, 82 [juvenile tried as adult may not be sentenced to life without parole or functional equivalent for nonhomicide offense]; *People v. Caballero* (2012) 55 Cal.4th 262, 265, 268-269 [same].) Though undoubtedly harsh, such a sentence, when warranted, "serves valid penological purposes: it unmistakably reflects society's condemnation of defendant's conduct and it provides a

19

strong psychological deterrent to those who would consider engaging in that sort of conduct in the future." (*Byrd*, at p. 1383.)

Appellant argues that as "horrible" as his crimes were, "he has almost no likelihood of repeating them if ever released." He notes that his offenses did not involve threats of violence, that his daughters have done very well in their lives despite the abuse, and that he lacked any other significant criminal record (though he acknowledges his conviction of forcible lewd conduct against S. and that he engaged in methamphetamine abuse and manufacturing). We are not persuaded.

At the time of his arrest in this case, appellant had been in prison for many years. Crediting his claim that he refrained from both child molestation and drug abuse during his incarceration, and noting that his score on the STATIC-99R actuarial instrument places him at a "low" risk of committing future sex offenses, he has nonetheless continued to deny molesting his daughters and there is no suggestion he had engaged in any sex offender treatment. That appellant's daughters have gone on to become strong young women does not render his conduct at the time less serious or suggest he does not remain a danger to others. Nor is it particularly mitigating that his crimes did not involve threats of physical violence; his daughters were very young when he molested them and he possessed a tremendous psychological advantage due to the parental relationship. None of the circumstances mentioned by appellant renders a lifetime in prison a grossly disproportionate punishment or one that is "out of sync" with the nature of the crime or the offender.

Appellant complains he is being punished more harshly than he would have been if he had murdered one of his daughters. The purpose of the One Strike law is "to ensure serious and dangerous sex offenders would receive lengthy prison sentences upon their first conviction." (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1296.) Appellant has been convicted of committing serious sexual offenses in two separate cases and against three separate victims, all of whom were very young at the time. Although the "final consequence" of a murder is categorically different than a sexual violation, the repeated commission of lewd acts against multiple victims is extremely serious (*Wutzke*, *supra*, 28

20

Cal.4th at pp. 930-931) and punishing such conduct as harshly as murder is neither shocking nor outrageous (*People v. Alvarado* 2001) 87 Cal.App.4th 178, 200 [no cruel and unusual punishment where rape during burglary punished as harshly as second degree murder]; *People v. Estrada* (1997) 57 Cal.App.4th 1270, 1278-1282 [same]).

Appellant also notes he is being punished more harshly than he would have been if convicted of two counts of continuous sexual abuse under section 288.5, which at the time of the offenses carried a sentence of up to 16 years in prison, and was not then subject to the One Strike law sentencing provisions. (*People v. Palmer* (2001) 86 Cal.App.4th 440, 443.) There was no prosecutorial obligation to proceed under a statute affording more lenient punishment. (See *Davis v. Municipal Court* (1988) 46 Cal.3d 64, 87 [so long as sufficient facts demonstrate probable cause defendant committed a crime, prosecutor has discretion to determine what charges to bring].)[6] Moreover, section 288.5 was added to the list of offenses subject to One Strike law sentencing in 2006 (former § 667.61; Stats. 2006, ch. 337, § 33, p. 2639), a further indication that a life term for multiple lewd acts against two or more victims is neither cruel nor unusual.

VI. *Ineffective Assistance of Counsel*

Appellant argues his trial counsel was ineffective to the extent he forfeited any issues on appeal by failing to object or otherwise preserve the record. We have no occasion to review counsel's performance as we have addressed appellant's claims on their merits and have not found any issues to be forfeited.

DISPOSITION

The judgment is affirmed.

---

[6] Appellant was originally charged with two counts of violating section 288.5 in addition to the lewd conduct counts under section 288, subdivision (a), but the district attorney dismissed those counts before trial.

_____

NEEDHAM, J.


We concur.


_____

SIMONS, Acting P.J.


_____

BRUINIERS, J.